UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NUSRAT BHATTI,

               Plaintiff,

               v.

GUILD MORTGAGE COMPANY, et al.,

               Defendants.

CASE NO. C11-0480JLR

ORDER

## I.     INTRODUCTION

Before the court are (1) Defendants Guild Mortgage Company ("Guild Mortgage") and Mortgage Electronic Registration System's ("MERS") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 8), (2) Defendant Northwest Trustee Services, Inc.'s ("NWTS") motion to join Guild Mortgage and MERS' motion to dismiss (Dkt. # 11), (3) Plaintiffs Nursat Bhatti and Erfan Semuel's motion to continue Defendants' motion to dismiss and to file an amended complaint (Dkt. # 16), and (4)

ORDER- 1

1  Guild Mortgage and MERS' motion to strike Plaintiffs' amended complaint (Dkt. # 21).

2  Having considered the motions, all papers filed in support or opposition thereto, and

3  being fully advised, the court GRANTS Guild Mortgage and MERS' motion to dismiss

4  (Dkt. # 8), GRANTS NWTS's motion to join the motion to dismiss (Dkt. # 11), DENIES

5  Plaintiffs' motion to continue the motion to dismiss (Dkt. # 16) as MOOT, and GRANTS

6  Guild Mortgage and MERS' motion to strike Plaintiffs' amended complaint (Dkt. # 21).[1]

7  ## II.  FACTUAL AND PROCEDURAL BACKGROUND

8  On March 17, 2009, Plaintiffs executed a promissory note to Guild Mortgage to

9  refinance their real property located in Marysville, Washington.  (Compl. ¶¶ 6, 13.)  As

10  security for this refinance, Plaintiffs executed a Deed of Trust that encumbered the

11  property.  (*Id.* ¶ 14.)  The amount owed to Guild Mortgage and secured by the Deed of

12  Trust was $325,244.00.  (Axtell Decl. (Dkt. # 10) Ex. C.)  Under the terms of the Deed of

13  Trust, Guild Mortgage is listed as the "Lender" and MERS is listed as the "nominee" for

14  Guild Mortgage.  (Compl. ¶¶ 18, 20.)  Fidelity National Title Company of Washington is

15  listed as the trustee under the Deed of Trust.  (NWTS Mot. (Dkt. # 11) Ex. 2.)  The Deed

16  of Trust provides that is secures "repayment of the debt evidenced by the Note" to Guild

17  Mortgage.  (Compl. ¶ 28.)

18  On or about October 29, 2010, MERS recorded an Assignment of the Deed of

19  Trust under Snohomish County Auditor's Number 201010290550.  (Axtell Decl. Ex. A.)

20  MERS assigned all beneficial interest under the Deed of Trust described above to Guild

21

22  [1] No party requested oral argument with regard to any of the referenced motions, and the court deems these motions to be appropriate for disposition without the oral argument of counsel.

1   Mortgae under the Assignment of Deed of Trust.  (*Id.*; Compl. ¶¶ 47-48.)  On or about

2   October 29, 2010, Guild Mortgage recorded an Appointment of Successor Trustee

3   naming NWTS as Successor Trustee and vesting NWTS with the powers of the original

4   trustee.  (NWTS Mot. Ex. 3.)

5          On or about December 1, 2010, NWTS recorded a Notice of Trustee's Sale under

6   Snohomish County Auditor's Number 201012010330.  (Axtell Decl. Ex. B; NWTS Mot.

7   Ex. 4.)  As the beneficiary, Guild Mortgage alleged a default under the Deed of Trust,

8   and NWTS scheduled a trustee's sale for March 4, 2011.  (*See* Axtell Decl. Ex. B; NWTS

9   Mot. Ex. 4.)  The Notice of Trustee's Sale recites that Plaintiffs are past due on their

10  monthly payments in the amount of $13,047.18.  (*See* Axtell Decl. Ex. B; NWTS Mot.

11  Ex. 4.)

12         Plaintiffs allege that "[t]he amount stated as due and owing is misstated in the

13  notice of default and payments were applied in contravention to the terms of the deed of

14  trust."  (Am. Compl. (Dkt. # 20) ¶ 81.)  However, they allege no factual details as to how

15  or why they believe this is so.  They allege that they "paid approximately $18,000 to

16  bring the account current . . . on or about May 2010.  (*Id.* ¶ 82.)  They further allege that

17  an insurance settlement was applied to their mortgage that rendered their payments

18  "current," but that "no payment relief was offered" by Guild Mortgage that would enable

19  them to maintain the property "as a performing asset."  (*See id.* ¶¶ 87-96.)  They do not

20  allege that they were able to remain current on their loan payments following the May

21  2010 $18,000 payment, nor do they allege that they were not in default or were current

22  with their payments at the time of foreclosure on March 4, 2011.  Indeed, Plaintiffs admit

1 that they "fell behind on their mortgage payments" when Ms. Bhatti lost her job (Am.

2 Compl. ¶ 88), and that they were unable to obtain a loan modification or payment relief

3 that would allow them to maintain "a performing asset." (*Id.* ¶¶ 88-97.) Plaintiffs have

4 acknowledged that "they had an obligation to satisfy the principle balance . . . ." (*Id.* ¶

5 94.)

6      In January 2011, Plaintiffs sent two letters to Guild Mortgage requesting

7 information. (Compl. ¶ 84; *see* Klika Decl. Ex. A.) Guild Mortgage responded to

8 Plaintiffs in writing, on or about February 20, 2011, stating that the requests did not

9 constitute Qualified Written Requests for purposes of the Real Estate Settlement

10 Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, because they were simply a list of

11 demands for information and did not specify a servicing related issue.   (Compl. ¶¶ 85-86;

12 Klika Decl. Ex. B.)

13      On March 3, 2011, Plaintiffs filed a complaint in Superior Court for the State of

14 Washington alleging causes of action against Guild Mortgage, MERS, and NWTS for

15 declaratory judgment, violations of RESPA, and quiet title.[2] (Compl. (Dkt. # 1-1).)

16 Although Plaintiffs filed their complaint on March 3, 2011 (one day before the scheduled

17 trustee's sale), they did not seek to enjoin the trustee's sale.

18      On March 4, 2011, the property was sold at a trustee's sale to Guild Mortgage as

19 the successful bidder. (Axtell Decl. Ex. C; NWTS Mot. Ex. 5.) Following the sale,

20

21 ────────────────

22      [2] On March 21, 2011, Defendants removed the action to federal court. (Dkt. # 1.)

1  NWTS recorded a Trustee's Deed under Snohomish County Auditor's Number

2  201103090315.  (Axtell Decl. ¶ 4, Ex. C; NWTS Mot. Ex. 5.)

3         Guild Mortgage and MERS filed a motion seeking dismissal of Plaintiffs' claims

4  for (1) declaratory judgment, (2) violation of RESPA, and (3) quiet title.  (Def. Mot.

5  (Dkt. # 8).)  NWTS also filed a motion to join Guild Mortgage and MERS' motion,

6  asserting that Plaintiffs' post-sale claims were barred under Washington law and that

7  none of Plaintiffs' claims pertained to NWTS.  (NWTS Mot. (Dkt. # 11).)  Plaintiffs then

8  filed a motion seeking to continue Defendants' motions to dismiss and to seeking to

9  amend their complaint to add claims for wrongful foreclosure, negligent infliction of

10 emotional distress, and violation of Washington's Consumer Protection Act ("CPA"),

11 RCW 19.86, *et seq*.  (Plaint. Mot. (Dkt. # 16).)  On September 13, 2011, while this

12 motion was pending and one day before the deadline to amend pleadings under the

13 court's case schedule (Dkt. # 14), Plaintiffs' filed their proposed Amended Complaint,

14 which added the three referenced new causes of action.  (Am. Compl. (Dkt. # 20).)  In

15 response, Guild Mortgage and MERS filed a motion to strike the amended complaint.

16 (Mot. to Strike (Dkt. # 21).)

17                          **III.    ANALYSIS**

18 **A.  STANDARDS**

19         When considering a motion to dismiss under Rule 12(b)(6), the court construes

20 the complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd.*

21 *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must

22 accept all well-pleaded facts as true and draw all reasonable inferences in favor of the

ORDER- 5

1    plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.

2    1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual

3    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

4    *v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v.*

5    *Twombly*, 550 U.S. 544, 570 (2007)); *see al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th

6    Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

7    allows the court to draw the reasonable inference that the defendant is liable for the

8    misconduct alleged."  *Id*.  Dismissal under Rule 12(b)(6) can be based on the lack of a

9    cognizable legal theory or the absence of sufficient facts alleged under a cognizable

10   legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11           In general, leave to amend "shall be freely given when justice so requires."  Fed.

12   R. Civ. P. 15(a).  However, leave to amend may be denied if the proposed amendment

13   either lacks merit or would not serve any purpose because to grant it would be futile in

14   saving plaintiff's suit.  *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459

15   (9th Cir. 1986).  If a claim is not based on a proper legal theory, dismissed without leave

16   to amend is appropriate because any amendment based on a faulty legal theory would be

17   futile.  *Fed. Nat'l Mortg. Assoc. v. Wages,* No. 11-cv-05396 RBL, 2011 WL 5138724, at

18   *2 (W.D. Wash. Oct. 28, 2011) ("[W]here the facts are not in dispute, and the sole issue

19   is whether there is liability as a matter of substantive law, the court may deny leave to

20   amend.") (citing *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988)); *Oliver v.*

21   *Countrywide Home Loans, Inc*., No. CIV S-09-1381 FCD/GGH, 2009 WL 3122573, at

22   *4 (E.D. Cal. Sept. 29, 2009) ("[A]mendment would be futile considering the legal

baselessness of plaintiff's claims, and thus, dismissal without leave to amend is appropriate.") (citing *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1258 (9th Cir. 2007)).

## B.  MATERIALS THE COURT CONSIDERS ON THE MOTIONS TO DISMISS

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted).  The Ninth Circuit, however, has carved out certain exceptions to this rule.  A court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  A court also may take judicial notice of matters of public record.  *Lee*, 250 F.3d at 688-89 (citations omitted).

Guild Mortgage and MERS have asked the court to consider certain publicly recorded documents, including:  (1) an Assignment of the Deed of Trust (Axtell Decl. Ex. A), (2) a Notice of Trustee Sale (*id.* Ex. B), and (3) a Trustee's Deed (*id.* Ex. C).  NWTS also has asked the court to consider publicly recorded documents, including: (1) the Deed of Trust (NWTS Mot. Ex. 2), (2) an Appointment of Successor Trustee (*id.* Ex. 3), (3) the same Notice of Trustee Sale presented by Guild Mortgage and MERS (*id.* Ex. 4), and (4) the same Trustee's Deed presented by Guild Mortgage and MERS.  These documents are all matters of public record of which the court may take judicial notice when considering the parties' motions to dismiss.

1    In addition to these matters of public record, Guild Mortgage and MERS have also

2    asked the court to consider copies of three letters.  (*See* Klika Decl. Exs. A, B.)  The first

3    two letters were sent to Guild Mortgage by Plaintiffs and are both entitled "QUALIFIED

4    WRITTEN REQUEST."  (*Id.* Ex. A.)  The third letter is a response from Guild Mortgage

5    to Plaintiffs with regard to the first two letters.  (*Id.* Ex. B.)  These letters are described in

6    Plaintiffs' complaint and relied upon with respect to their claim under RESPA.  (Compl.

7    ¶¶ 84-86, 88-89, 91.)  NWTS has also asked the court to consider a copy of the Note at

8    issue in this action.  (NWTS Mot. Ex. 1.)  The Note also is specifically described by

9    Plaintiffs and relied upon in their complaint.   (Compl. ¶ 13.)  No party has challenged

10   the authenticity of any of these documents.  Accordingly, the court may consider these

11   documents when ruling on the parties' motions to dismiss.

12   **C.   GUILD MORTGAGE AND MERS' MOTION TO DISMISS**

13        **1.   The Waiver Doctrine under Washington's Deed of Trust Act**

14        Initially, the court notes that Plaintiffs' state law claims for declaratory judgment

15   and quiet title are both barred by the waiver doctrine under Washington's Deed of Trust

16   Act, RCW ch. 61.24.  *See Gossen v. JPMorgan Chase Bank*, --- F. Supp. 2d ---, 2011 WL

17   4939828, at *5 (W.D. Wash. Oct. 18, 2011).  The Deed of Trust Act sets out the

18   procedures that must be followed to properly foreclose a debt secured by a deed of trust.

19   RCW ch. 61.24.  A proper foreclosure action extinguishes the debt and transfers title to

20   the property to the beneficiary of the deed of trust or to the successful bidder at a public

21   foreclosure sale. *Gossen*, 2011 WL 4939828, at *5 (citing *Albice v. Premier Mortg.*

22   *Servs. of Wash., Inc.*, 157 Wn. App. 912, 920, 239 P.3d 1148 (2010).

1    Washington's Deed of Trust Act provides a procedure by which any enumerated

2  entity may restrain a trustee's sale on any proper ground.  *Id.* at *6 (citing *Brown v.*

3  *Household Realty Corp*., 189 P.3d 233, 235 (Wash. Ct. App. 2008)).  This statutory

4  procedure is the only means by which a grantor may restrain a sale once foreclosure has

5  begun with receipt of the notice of sale and foreclosure.  *Id.*  (citing Brown, 189 P.3d at

6  236.)  A borrower's failure to take advantage of the pre-sale remedies under the Deed of

7  Trust Act results in waiver of their right to object to the trustee's sale where the party (1)

8  received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of

9  a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court

10  order enjoining the sale.  *Id.* (citing *Brown*, 189 P.3d at 163); *see generally Plein v.*

11  *Lackey*, 67 P.3d 1061, 1066-69 (Wash. 2003).

12    The court has taken judicial notice of the Notice of Trustee's Sale, which contains

13  a notice stating that "[a]nyone having any objection to the sale on any grounds

14  whatsoever will be afforded an opportunity to be heard as to those obligations if they

15  bring a lawsuit to restrain the sale pursuant to RCW 61.24.130." (*See* Axtell Decl. Ex. B;

16  NWTS Mot. Ex. 4.)  Plaintiffs have not alleged or otherwise asserted that they did not

17  receive Notice of Trustee's Sale.  Although they filed their lawsuit one day prior to the

18  Trustee's sale, Plaintiffs did not invoke any pre-sale remedy afforded to them with

19  respect to their causes of action seeking to set aside sale of the foreclosed property.

20  Accordingly, the quiet title and declaratory judgment claims may be deemed waived.

21  *Gossen*, 2011 WL 4939828, at *5 (citing *Brown*, 189 P.3d at 236; RCW 61.24.127; RCW

22  61.24.130).  Plaintiffs' claims for declaratory judgment and quiet title are therefore

1    subject to dismissal pursuant to the waiver doctrine of Washington's Deed of Trust Act.

2    *Id.*

3           **2.  Plaintiffs' Cause of Action for Declaratory Judgment**

4           Even assuming that Plaintiffs' claim for declaratory judgment is not barred under

5    Washington's Deed of Trust Act, it is subject to dismissal on other grounds.  Plaintiffs

6    base their cause of action for declaratory relief on allegations that the role played by

7    MERS in the Deed of Trust, which lists MERS as the "nominee" for Guild Mortgage,

8    was improper, and MERS' assignment of all beneficial interest under the Deed of Trust

9    to Guild Mortgage under the Assignment of the Deed of Trust was invalid.  (*See* Compl.

10   ¶¶ 20-27, 35-36, 47-53, 63, 66-73; NWTS Mot. Ex. 2 (Deed of Trust) at 1; Axtell Decl.

11   Ex. A (Assignment of Deed of Trust).)  MERS is a private electronic database, operated

12   by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans,

13   as well as any changes in loan servicers.  *Cervantes v. Countrywide Home Loans, Inc.*,

14   656 F.3d 1034, 1039 (9th Cir. 2011).  In the event of default on the loan, the lender may

15   appoint a trustee to initiate foreclosure on its behalf.  *Id.*  To have the legal authority to

16   foreclose, the trustee must have authority to act as the holder, or agent of the holder, of

17   both the deed and the note together.  *Id.*  One of the main premises of Plaintiffs' lawsuit

18   is that MERS impermissibly splits the note and the deed by facilitating transfer of the

19   beneficial interest in the loan among lenders while maintaining MERS as the nominal

20   holder of the deed.  (*See* Compl. ¶¶ 20-27, 35-36, 47-53, 63, 66-73)  Plaintiff also makes

21   vague allegations concerning MERS' role in the securitization of home loans.  (*See id.* ¶¶

22   52-53.)

1   The claims Plaintiffs make regarding the role of MERS are similar to other claims

2   which have been rejected in past cases brought in this district. *See, e.g.*, *Vawter v. Quality*

3   *Loan Serv. Corp. of Wash.*, 707 F. Supp. 2d 1115, 1125–1126 (W.D. Wash. 2010);

4   *Ceburn v. HSBC Bank USA, N.A.*, No. C10-5742BHS, 2001 WL 321992, at *3 (W.D.

5   Wash. Feb. 2, 2011); *Daddabbo v. Countrywide Home Loans, Inc.*, No. C09-1417RAJ,

6   2010 WL 2102485, at *5 (W.D. Wash. May 20, 2010).  Further, Plaintiffs' claims are

7   without merit because they cannot establish that they were misinformed about the MERS

8   system, relied on any misinformation in entering into their home loan, or were injured as

9   a result of the misinformation.  *See Cervantes*, 656 F.3d at 1042.  In fact, the provisions

10  in the Deed of Trust, which Plaintiffs signed, specifically provides MERS with the rights

11  to foreclose and to sell the property, and to transfer interests under the Deed of Trust.

12  (*See* NWTS Mot. Ex. 2 (Deed of Trust) at 2 ("Borrower understands and agrees that

13  MERS holds only legal title to the interests granted by Borrower in this Security

14  Instrument, but, if necessary to comply with law or custom, MERS (as nominee for

15  Lender and Lender's successors and assigns) has the right:  to exercise any or all of those

16  interests, including, but not limited to, the right to foreclose and sell the Property; and to

17  take any action required of Lender including, but not limited to, releasing and canceling

18  this Security Instrument.").

19  Finally, although Plaintiffs' claim, if any, arising out of MERS' role in the

20  securitization of home mortgages is unclear, even if otherwise properly plead, such a

21  claim would nevertheless fail.  Securitization merely creates a separate contract, distinct

22  from the Plaintiffs' debt obligations under the Note, and does not change the relationship

of the parties in any way.  *See Moseley v. CitiMortgage, Inc.*, No. C11-5349RJB, 2011
WL 5175598, at *7 (W.D. Wash. 2011) (citing *Commonwealth Prop. Advocates, LLC v.
First Horizon Home Loan Corp.*, 2010 WL 4788209, at *2 (D. Utah Nov.16, 2010)
(quoting *Larota—Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D.
Va. 2010)).

The court concurs with the reasoning and conclusions set forth in *Vawter*,
*Daddabbo*, *Ceburn*, and *Moseley*.  MERS has the authority to act as a beneficiary under
the Deed of Trust where such authority is explicitly granted upon execution of the
instrument.  In this case, Plaintiffs specifically agreed to MERS' role as beneficiary under
the Deed of Trust they signed.  Their allegations that MERS did not have authority do not
state a claim for relief.

To establish a claim for declaratory relief, there must be a "substantial
controversy, between parties having adverse legal interests, of sufficient immediacy and
reality to warrant issuance of a declaratory judgment."  *Marin v. Lowe*, 8 F.3d 28 (9th
Cir. 1993).  Unless an actual controversy exists, the district court is without power to
grant declaratory relief.  *See Dairies v. Alcatel, S.A.*, 105 F.Supp.2d 1153, 1155 (E.D.
Wash. 2000) (quoting *Garcia v. Brownell*, 236 F.2d 356, 357–58 (9th Cir. 1956)).  As
discussed above, Plaintiffs' contentions regarding MERS' role in the Deed of Trust and
subsequent foreclosure are without merit.  Moreover, they have offered no other
allegations demonstrating the existence of a "substantial controversy."  Accordingly, they
have not stated a claim for declaratory relief.  *See, e.g.*, *Dooms v. Cal-Western
Reconveyance Corp. of Wash.*, No C11-5419RJB, 2011 WL 5592760, at *7 (W.D. Wash.

1    Nov. 16, 2011) (ruling that because plaintiffs' contentions regarding the assignment by

2    MERS are without merit they fail to state a claim for declaratory relief as well).  Further,

3    the court declines to grant leave to amend this claim.  Because the court has rejected

4    Plaintiffs' underlying claim regarding MERS on legal grounds, any amendment of this

5    claim would be futile.

6            **3.    Plaintiffs' Cause of Action for Quiet Title**

7            Even if Plaintiffs' claim for quiet title was not barred by Washington's Deed of

8    Trust Act as discussed above, it would be subject to dismissal on other grounds.

9    Plaintiffs' allegations underlying their claim for quiet title rehash their position with

10   respect to MERS.  Plaintiffs allege that their "property is encumbered by a Deed of Trust

11   which is null and void because MERS has no valid recorded interest in plaintiffs' Deed of

12   Trust, Note, or Property."  (Compl. ¶ 98.)  As a result, Plaintiffs allege that their

13   "property is encumbered by a Deed of Trust which is null and void, but is clouding title

14   to the Property," and "seek[] an order from the court quieting title to the property in favor

15   of plaintiffs." (*Id.* ¶¶ 101, 104.)  The court has already rejected the underlying legal basis

16   for Plaintiffs' claims against MERS.  Accordingly, this claim is subject to dismissal as

17   well.  For the same reasons that court declined to permit Plaintiffs an opportunity to

18   amend their claim for declaratory judgment, the court declines to permit amendment of

19   this claim as well. Because the underlying legal basis for the claim is not well-founded,

20   any amendment would be futile.

21

22

ORDER- 13

1         **4.  Plaintiffs' Cause of Action for Alleged Violation of RESPA**

2         Plaintiffs sent two letters, dated in January 2011, to Guild Mortgage.  (Compl. ¶

3 84; Klika Decl. Ex. A.)  Plaintiffs entitled both letters with the words "QUALIFIED

4 WRITTEN REQUEST."  (Klika Decl. Ex. A.)  Plaintiffs allege that Guild Mortgage

5 violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to their alleged qualified

6 written requests.  (Compl. ¶¶ 80-95.)  Plaintiffs' letters, however, are not "qualified

7 written requests" as contemplated by section 2605(e)(1)(B) of Title 12, and accordingly,

8 the court dismisses this claim.

9         Section 2605(e)(1)(B) defines a "qualified written request" as "a written

10 correspondence, other than notice on a payment coupon or other payment medium

11 supplied by the servicer, that-- (i) includes, or otherwise enables the servicer to identify,

12 the name and account of the borrower; and (ii) includes a statement of the reasons for the

13 belief of the borrower, to the extent applicable, that the account is in error or provides

14 sufficient detail to the servicer regarding other information sought by the borrower."  12

15 U.S.C. § 2605(e)(1)(B).

16         Plaintiffs' purported qualified written requests, however, demand a laundry list of

17 information without identifying the reasons Plaintiffs believe their account is in error.

18 Although the letters reference servicing in passing and provide Plaintiff' names, loan

19 number, and property address, Plaintiffs' requests are not related to the servicing of their

20 loan, but rather relate more generally to allegations of underlying fraud or mischief in the

21 transaction, involving not only the Note, but the Deed of Trust as well.

22         The first paragraph of their first letter states:

I dispute the amount that is owed according to my Monthly Billing Statement and request that you send me information about the fees, costs and escrow accounting on the above-referenced loan.   In addition, there is a serious concern regarding the actual ownership and servicing of the loan and underlying security interest and whether such ownership has been properly disclosed to (Me/US) [sic] the mortgagor and properly recorded with the County Clerk and Recorder's Office.

(Klika Decl. Ex. A.)  The letter goes on to demand over-broad categories of 45 different types of information or documents, including:

(1) "[a] Statement of Account and application of all payments made on this Promissory Note from inception of the loan to the date of your response to this request;"

(2) "[t]he original Promissory Note; please accompany with a verified statement identifying the owner and holder indue course, and stating whether the Promissory Note is in the possession of the holder thereof and has not been lost or destroyed,"

(3)  "[a]n accounting of payment history from borrower on the Promissory Note and Deed of Trust, including who such payments went  to, the breakdown of such payments as to the principal, interests, fees, costs and a detail of each and every credit and debit posted on relating to this Deed of Trust and Promissory Note,"

(4) [t]he original Deed of Trust; please accompany with a verified statement identifying the owner and holder in due course, and that it is in the possession of the owner and holder thereof and has not been lost or destroyed,"

(5) "[i]dentify all assignments, transfers, allonges, or other documents related to this Deed of Trust and/or Promissory Note, including but not limited to, copies of all such documents,"

(6) "[a]n explanation of how the amount due on the Monthly Billing Statement was calculated and an explanation and dates when this amount was adjusted and why this amount was adjusted,"

(7) "[a] statement of all fess, rebates, refunds, kickbacks, profits and gains made to any entity involved in this Deed of Trust and Promissory Note and or Settlement Services,"

1      (8) "[a]ll letter, emails, faxes, recordings and or other correspondence (including transmittals) regarding this Deed of Trust and Promissory Note," and

2

3      (9) "[n]ames and addresses of all servicers, sub-servicers and designated agents of this Deed of Trust and/or Promissory Note, and all payments for services rendered on this Deed of Trust and Promissory Note that went to such servicers

4      and sub-servicers including inspection fees, appraisals, BPO's, etc."

5  (*Id.*)  Plaintiffs' second letter to Guild Mortgage is similar to the first, but requests an

6  additional seven categories of information or documents.  (*Id.*)

7      Because Plaintiffs letters effectively demand anything and everything that relates

8  to their loan, from its inception, as well as to the Deed of Trust, their letters do not assist

9  Guild Mortgage in identifying and investigating any purported discrepancies with the

10  servicing of their loan.  Such broad requests for information and documentation related

11  generally to Plaintiffs' loan are not covered by section 2605 of Title 12.  *See Derusseau*

12  *v. Bank of Am., N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL 5975821, at *4 (S.D. Cal.

13  Nov. 29, 2011); *see also Rymal v. Bank of Am.*, No. CV 10–00280 DAE–BMK, 2011 WL

14  6100979, at *4 (D. Hawaii Dec. 6, 2011) (dismissing complaint for failing to adequately

15  allege facts to establish that request was "qualified written request" under RESPA);

16  *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV–11–156–HZ, 2011 WL 3476648,

17  at *12 (D. Or. Aug. 8, 2011) (dismissing a RESPA claim because plaintiffs failed to

18  "attach a copy of their correspondence to the Complaint or to allege facts showing the

19  communication concerned servicing of the loan as defined by the statute").

20      Section 2605 only requires loan servicers to respond to a proper qualified written

21  request by correcting the account discrepancy, explaining why the account is correct, or if

22  the information is unavailable, by providing contact information for someone who can

ORDER- 16

1    assist the borrower with her inquiry.  *See* 12 U.S.C. §§ 2605(e)(2)(A)-(C).  Thus, even if

2    Plaintiffs' letters were otherwise proper qualified written requests under the statute, their

3    requests far exceed the scope of information that Guild Mortgage is required to provide in

4    response.  Guild Mortgage has no statutory obligation under RESPA to provide Plaintiffs

5    the extraordinary amount of information and documents that they requested in their

6    letters.  *See Derusseau*, 2011 WL 5975821, at *4.

7            Finally, Plaintiffs' complaint fails to adequately allege that they suffered damages

8    as a result of Guild Mortgage's alleged conduct.  Under section 2605(f)(1) of Title 12, at a

9    minimum, Plaintiffs must allege the "actual damages" they suffered as a result of Guild

10   Mortgage's failure to respond to their purported qualified written requests.  *See*

11   *Derusseau*, 2011 WL 5975821, at *4 (citing *Garcia v. Wachovia Mortg. Corp.*, 676 F.

12   Supp. 2d 895, 909 (C.D. Cal. 2009)); *see also Rymal*, 2011 WL 6100979, at *5-*6

13   (dismissing RESPA claim where plaintiff provided only conclusory allegations of

14   damages, and collecting myriad similar cases).  Plaintiffs' vague, conclusory allegations

15   that they are entitled to damages as a result of Guild Mortgage's alleged statutory

16   violation (Compl. ¶¶ 94-95) are insufficient, as they do not identify any specific

17   identifiable damages Plaintiffs suffered as a result of Guild Mortgage's alleged failure to

18   respond.  *See* 12 U.S.C. § 2605(f)(1).  "General allegations of harm are insufficient." *See*

19   *Derusseau,* 2011 WL 5975821, at *4.

20           Plaintiffs' letters do not constitute "qualified written requests" under section

21   2605(e) of Title 12.  Further, Plaintiffs do not identify or allege the actual damages they

22   suffered.  For both reasons, Plaintiffs have failed to state a RESPA violation.  Moreover,

1   the court concludes leave to amend this claim would be futile because Plaintiffs'

2   underlying letters are not qualified written requests, and therefore cannot serve as the

3   basis for a RESPA violation. *See id.* at *5.

4   **D.  NWTS' MOTION TO DISMISS**

5       For many of the same reasons stated above, the court also grants NWTS' motion

6   to join Guild Mortgage and MERS' motion to dismiss (Dkt. # 11).  Plaintiffs' claims for

7   declaratory relief and quiet title, which are based on faulty legal grounds concerning the

8   alleged impropriety of the role of MERS in Plaintiffs' loan transaction and Deed of Trust,

9   and which are deemed waived under Washington's Deed of Trust Act, are as worthy of

10  dismissal when asserted against NWTS as they are when asserted against Guild Mortgage

11  and MERS.  Further, RESPA creates no obligations on the part of the trustee to respond

12  to qualified written requests.  *See* 12 U.S.C. § 2605(e)(1).  In any event, Plaintiffs have

13  stated no factual allegations that they directed a qualified written request to NWTS.

14  Plaintiffs' complaint is devoid of sufficient factual matter alleged against NWTS to "state

15  a claim to relief that is plausible on it face." *Iqbal*, 129 S.Ct. at 1949.  Accordingly, the

16  court dismisses Plaintiffs' claims with respect to NWTS as well.

17  **E.  PLAINTIFFS' MOTION TO CONTINUE DEFENDANTS' MOTIONS
       TO DISMISS AND/OR AMEND THEIR COMPLAINT**

18
19      Plaintiffs have moved for leave to file an amended complaint that adds three

    additional causes of action:  (1) wrongful foreclosure, (2) intentional infliction of

20  emotional distress or the tort of outrage, and (3) violation of Washington's CPA, RCW

21  19.86, *et seq*.  (Plaint. Mot. at 2.)  As discussed below, the court denies Plaintiffs' motion

22

1    to amend their complaint because the additional claims they propose are subject to

2    dismissal under Federal Rule of Civil Procedure 12(b)(6).  Accordingly, Plaintiffs'

3    proposed amendments would be futile.  *See Ventress v. Janpan* Airlines, 603 F.3d 676,

4    680-81 (9th Cir. 2010) (noting that district court acts within its discretion to deny leave to

5    amend when the amendment would be futile).  Plaintiffs also have moved to continue

6    Defendants' motions to dismiss until Defendants had an opportunity to "expand their

7    motion[s] to dismiss" to encompass the additional causes of action in Plaintiffs' proposed

8    amended complaint.  (Plaint. Mot. at 2.)  The court also denies Plaintiffs' motion to

9    continue as moot.

10           Initially, the court notes that, like Plaintiffs' claims for declaratory relief and quiet

11   title, Plaintiffs' proposed state law claims for wrongful foreclosure against Guild

12   Mortgage and intentional infliction of emotional distress would be barred by the waiver

13   doctrine under Washington's Deed of Trust Act, RCW ch. 61.24.  The same would not be

14   true, however, with regard to Plaintiffs' proposed claim under Washington's CPA, RCW

15   19.86, *et seq.*, or with respect to their proposed claims for wrongful foreclosure against

16   NWTS.  The Deed of Trust Act was amended in 2009 to permit claims for money

17   damages after a foreclosure sale based upon (1) fraud or misrepresentation, (2) claims

18   under Title 19 RCW, (3) the failure of the trustee to "materially comply" with the

19   provisions of the Act, and (4) a violation of RCW 61.24.026.  *See* RCW 61.24.127;

20   *Gossen*, 2011 WL 4939828, at *6.  Plainly, subsection two of this provision would apply

21   to Plaintiffs' proposed CPA claim.  It is less clear to the court whether subsection three

22   would apply to Plaintiffs' claim for wrongful foreclosure against NWTS.  The court

1   found no case law providing any guidance.  Ultimately, however, the court need not

2   decide this issue, because even if not barred by the waiver doctrine as a result of the 2009

3   amendments to Washington's Deed of Trust Act, all of the Plaintiffs' proposed claims

4   would be subject to dismissal on other grounds as well, as discussed below.

5   **1.   Plaintiffs' Proposed Claim for Wrongful Foreclosure**

6   Plaintiffs' proposed claim for wrongful foreclosure is subject to dismissal under

7   Rule 12(b)(6).  Washington's Deed of Trust Act, RCW ch. 61.24, *et seq.*, governs non-

8   judicial foreclosure procedures.  In order for a foreclosure to begin, a borrower must be in

9   default on his mortgage and then be given 30 days notice and an opportunity to cure the

10  default.  *See* RCW 61.24.030.  Here, Plaintiffs do not allege that they did not default on

11  their mortgage, that Defendants failed to give them proper notice, or that they otherwise

12  violated any foreclosure procedures under the Deed of Trust Act.

13  Indeed, in their proposed amended complaint, Plaintiffs concede that they "fell

14  behind on their mortgage payments when primary borrower, Nusrat Bhatti, lost her job as

15  a nurse." (Am. Comp. ¶ 88.)  Although they allege that she soon found new work, her

16  reduced hourly rate "not only made them fall behind on the mortgage, but all other debt"

17  as well.  (*Id.*)  Plaintiffs allege that application of an insurance settlement to their

18  mortgage "brought the mortgage current,"[3] but the lack of any payment relief from the

19  bank did not allow them to maintain "a performing asset."  (*Id.* ¶ 89.)  A claim for

20  wrongful foreclosure is properly dismissed where there are no allegations that the

21  _____

22  [3] (*See also* Am. Compl. ¶ 82 (". . . Plaintiffs paid approximately $18,000 to bring the
account current with Guild [Mortgage] on or about May 2010.")

plaintiff is not in default.  *See Cervantes*, 656 F.3d at 1043; *Marks v. Green Tree Serv. and Default Resolution Network*, No. 10-17478, 2011 WL 5316758, at *1 (9th Cir. Nov. 2, 2011) ("The district court properly dismissed [plaintiff's] wrongful foreclosure claim because [plaintiff] failed to show that she was in default on her mortgage loan.") (unpublished).

Plaintiffs also allege that they repeatedly applied for a loan modification, and also sought bank approval of a short-sale.  (*Id.* ¶¶ 90-97.)  They allege that the bank declined to approve a loan modification multiple times, and rejected the proposed short-sale.  (*Id.* ¶¶ 91, 93, 95-97.)  Guild Mortgage was under no legal obligation to approve a short sale on Plaintiffs' property or to approve a loan modification prior to the institution of foreclosure proceedings.  *See, e.g.*, *Lawson v. Ocwen Loan Serv., LLC*, No. C10-5481BHS, 2011 WL 564376, at *2 (W.D. Wash. Feb. 8, 2011) (dismissing claim for wrongful foreclosure and stating that ". . . [Plaintiff] fails to show, even assuming Defendants did in fact enter into the forbearance agreements as he alleges, how Defendants violated the Deed of Trust Act in proceeding with the foreclosure process when [plaintiff] failed to cure his default."), *vacated in part on other grounds*, No. C10-5481BHS, 2011 WL 1739997 (W.D. Wash. May 5, 2011).  Accordingly, the court denies Plaintiffs' motion to amend their complaint to state a claim for wrongful foreclosure.

### 2.  Plaintiffs' Proposed Claim for Intentional Infliction of Emotional Distress

Plaintiffs' proposed claim for intentional infliction of emotional distress also would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  Intentional

1    infliction of emotional distress, also called the tort of outrage, requires proof of (1)

2    extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

3    distress, and (3) actual result to plaintiff of severe emotional distress.  *Kloepfel v. Bokor*,

4    66 P.3d 630, 632 (Wash. 2003).  The first element requires proof that the conduct was "so

5    outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

6    decency, and to be regarded as atrocious, and utterly intolerable in a civilized

7    community."  *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002).  The Court

8    makes the initial determination of whether "reasonable minds could differ on whether the

9    conduct was sufficiently extreme to result in liability."  *Dombrosky v. Farmers Ins. Co. of*

10   *Wash.*, 928 P.2d 1127, 1137 (Wash. Ct. App. 1996).

11          The conduct Plaintiff complains of predominately relates to the role of MERS in

12   the Deed of Trust and the foreclosure process.  The court has already ruled against

13   Plaintiffs with respect to their allegations concerning MERS.  Further, Plaintiffs "have

14   not plead any facts from which the court could reasonably infer that any of the defendants

15   committed any 'extreme and outrageous' conduct in their dealings with [Plaintiffs], or

16   that the emotional distress complained of was inflicted intentionally or recklessly."  *See,*

17   *e.g.*, *Thepvongsa v. Reg'l Trustee Serv. Corp.*, No. No. C10-1045RSL, 2011 WL 307364,

18   at *3-*4 (W.D. Wash. Jan. 26, 2011) (no outrageous conduct in foreclosure process),

19   *Schanne v. Nat'l Mortg., LLC*, No. C10-5753BHS, 2011 WL 5119262, at *4-*5 (W.D.

20   Wash. Oct. 27, 2011) (same);  *Bain v. Metro. Mortgage Group Inc.*, No. C09-0149 JCC,

21   2010 WL 891585, at *3-*4 (W.D. Wash. Mar. 11, 2010) (same).  Accordingly, the court

22   denies Plaintiffs' motion to amend their complaint to add a claim for intentional infliction

ORDER- 22

1   of emotional distress.  To amend their complaint to add such a claim would be futile

2   because it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

3               **3.   Plaintiffs'' Proposed  Claim for Violation of the CPA**

4               To prevail on a CPA claim, a plaintiff must show:  (1) an unfair or deceptive act or

5   practice; (2) that occurs in trade or commerce; (3) a public interest; (4) injury in their

6   business or property; and (5) a causal link between the unfair or deceptive act and the

7   injury suffered.  *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d

8   1054, 1061 (Wash. 1993).  Failure to satisfy even one of the elements is fatal to a CPA

9   claim.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 719 P.2d 531,

10  540 (1986) ("A successful plaintiff is one who establishes all five elements of a private

11  CPA claim.").

12              Plaintiffs' proposed CPA claim is based on their theory that the Deed of Trust is

13  "null and void because MERS has no valid recorded interest in plaintiffs' Deed of Trust,

14  Note, or Property," and that "Defendants all engaged in a scheme which was designed to

15  deceive Plaintiffs in this matter."  (Am. Compl. ¶¶ 115-126.)  The court has already

16  rejected Plaintiffs' argument based on MERS' role.  As discussed above, where

17  borrowers have specifically agreed to MERS' role by executing the Deed of Trust, they

18  cannot later challenge that role.  *See Ceburn v. HSBC Bank USA, N.A.*, No. C10-

19  5742BHS, 2001 WL 321992, at *3 (W.D. Wash. Feb. 2, 2011) ("[C]ourts consistently

20  hold, when evaluating similar deeds, that MERS acted as a beneficiary and possessed the

21  rights set out [in the deed of trust]."); *Vawter*, 707 F. Supp. 2d at 1125–1126  (dismissing

22  claim on basis that MERS is a proper beneficiary under the language of the deed of trust).

1   Further, Plaintiffs allege no facts underpinning its conclusory allegation that they suffered

2   harm as a result of MERS' role as beneficiary under the Deed of Trust and its assignment

3   to Guild Mortgage.  (*See* Am. Compl. ¶ 130.)  Such conclusory allegations are

4   insufficient to "state a claim to relief that is plausible on it face."  *Iqbal*, 129 S.Ct. at

5   1949.  Accordingly, the court denies Plaintiffs' motion to amend its complaint to add this

6   cause of action.

7          Because the court has found that each of the proposed claims that Plaintiffs seek to

8   add in their proposed amended complaint would be subject to dismissal under Federal

9   Rule of Civil Procedure 12(b)(6), the court denies Plaintiffs' motion to amend their

10  complaint (Dkt. # 16).  The court further denies their motion for a continuance of

11  Defendants' motion to dismiss their original complaint (Dkt. # 16) as moot.  Finally,

12  because the court has denied Plaintiffs' motion to amend their complaint, the court grants

13  Defendants' motion to strike Plaintiffs' amended complaint (Dkt. # 21).

14                            **IV.    CONCLUSION**

15         Based on the forgoing, the court GRANTS Guild Mortgage and MERS' motion to

16  dismiss in its entirety.  (Dkt. # 8.)  The court also GRANTS NWTS' motion to join

17  Defendants' motion to dismiss (Dkt. # 11).  Accordingly, all claims against all

18  Defendants are dismissed with prejudice in this matter.  The court also DENIES

19  Plaintiffs' motion to continue Defendants' motion to dismiss and to amend Plaintiffs'

20  complaint (Dkt. # 16).  As discussed above, Plaintiffs' proposed new claims are subject

21  to dismissal under Rule 12(b)(6), and therefore the amendments would be futile.  Finally,

22

ORDER- 24

1  the court GRANTS Guild Mortgage and MERS' motion to strike Plaintiffs' amended

2  complaint.  (Dkt. # 21).

3       Dated this 16th day of December, 2011.

JAMES L. ROBART
United States District Judge